IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

BRIDGET BECKFORD

      Plaintiff,

    v.                                      Civil Action No. 3:23cv828

ELEVANCE HEALTH, INC.,

      Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Elevance Health, Inc.'s

(f/k/a Anthem, Inc.) ("Elevance") Motion for Partial Judgment on the Pleadings (the "Motion").

(ECF No. 14.)  Plaintiff Bridget Beckford responded in opposition and Elevance replied.

(ECF Nos. 20, 21.) [1]

The matter is ripe for disposition.  The Court dispenses with oral argument because the

materials before it adequately present the facts and legal contentions, and argument would not

aid in the decisional process.  For the reasons articulated below, the Court will grant the Motion.

(ECF No. 14.)

---

[1] The Second Amended Complaint and Notice of Removal refer to Elevance as "Anthem Health Plans of Virginia, Inc."  (ECF Nos. 1, 1-1.)  On December 12, 2023, this Court substituted Anthem Health Plans of Virginia, Inc. with Elevance, and dismissed Anthem Health Plans of Virginia, Inc. from the case without prejudice.  (ECF No. 4.)  For readability, this Court will consider references to Anthem Health Plans of Virginia, Inc. to be references to Elevance.

# I. Factual and Procedural Background

**A.**     **Factual Background[2]**

**1.**     **Ms. Beckford Joins Elevance for Job No. 1**

On April 16, 2021, Ms. Beckford, an African American woman, first began working for

Elevance as an underwriter on the Virginia Key Accounts team ("Job No. 1").  (ECF No. 1-1, at

66 ¶¶ 16–17; ECF No. 15-1, at 7.)  While working for Elevance in this role, Ms. Beckford "was

---

[2] For purposes of this Motion, the Court will accept the well-pleaded factual allegations in the Second Amended Complaint, (ECF No. 1-1), as true and draw all reasonable inferences in favor of Plaintiff.  *See, e.g., Plantan v. Smith*, No. 3:22CV407 (MHL), 2023 WL 3358312, at *1 n.1 (E.D. Va. May 10, 2023).

The Court will also consider Exhibit A and Exhibit B to Elevance's Motion.  (ECF Nos. 15-1, 15-2.)  Exhibit A ("Charge No. 1") is Plaintiff's March 25, 2021 Charge filed with the Equal Employment Opportunity Commission ("EEOC").  (ECF No. 15-1.)  Exhibit B is Plaintiff's December 20, 2021 Charge filed with the EEOC, which includes thirteen pages of attachments ("Charge No. 2").  (ECF No. 15-2.)  Charge No. 1 and Charge No. 2 will be collectively referred to as the "Charges."  Plaintiff cites to and explicitly relies upon the Charges in her Second Amended Complaint, they are integral to the Second Amended Complaint, and no party disputes the authenticity of these documents.  Therefore, the Court may consider them for the purpose of this Rule 12 Motion without converting the Motion to one for summary judgment.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (on a motion to dismiss, the court "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."); *Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted) ("[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12 motion into one for summary judgment] so long as the authenticity of these documents is not disputed.").  Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even when the EEOC charge is not filed with the Complaint.  *See, e.g., Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 618 n.3 (E.D. Va. 2011); *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 618 (E.D. Va. 2011).

To the extent the Second Amended Complaint conflicts with the allegations in the Charges, the Charges prevail.  See *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails."); *Holloman v. Huntington Ingalls, Inc.*, No. 2:19cv455 (RBS), 2020 WL 9600496, at *4, n.4 (E.D. Va. Mar. 17, 2020) (where a plaintiff's EEOC charge was attached to the complaint, the EEOC charge controls).

subject to discrimination by Senior Group Underwriter Pam Ayers", a Caucasian woman.
(ECF No. 1-1, at 66 ¶ 19.)

As a member of the Virginia Key Accounts team, Ms. Beckford worked with Ms. Ayers, Director Maria Gregory, and Business Change Manager Kim T. Williams.  (ECF No. 1-1, at 66 ¶ 20.)  While the team was "structured so that [Ms.] Beckford would share tasks with [Ms.] Ayers," Ms. Ayers also had a "degree of managerial control over [Ms.] Beckford as a Senior Group Underwriter[,]" and "was also assigned to instruct and train [Ms.] Beckford."
(ECF No. 1-1, at 66 ¶¶ 20–21.)

Ms. Beckford suspected that Ms. Ayers possessed a "racially-motivated animus" which involved Ms. Ayers "regularly [making] disparaging comments directed at racial minorities."
(ECF No. 1-1, at 66 ¶¶ 22–23.)  When Ms. Williams, an African American woman, was promoted to Business Change Manager, Ms. Beckford witnessed Ms. Ayers "become incensed that [Ms.] Williams and not [Ms.] Ayers has been promoted."  (ECF No. 1-1, at 67 ¶ 27.)  Ms. Ayers "berated [Ms.] Beckford whenever [she] sought advice or assistance from [Ms.] Williams," and "flung a computer mouse at a file cabinet near [Ms.] Beckford, seized [Ms.] Beckford's notebook without warning in a meeting, and tasked [Ms.] Beckford with completing an increasingly burdensome workload[]."  (ECF No. 1-1, at 67 ¶¶ 28–29.)

In December 2019, Ms. Ayers drew a face with a frown in black marker on the dry erase board in Ms. Beckford's cubicle.  (ECF No. 1-1, at 67 ¶ 30.)  Senior Group Underwriter Ayers then used a brown marker to draw a stick figure and told Ms. Beckford that the drawing resembled "a n****r."  (ECF No. 1-1, at 67 ¶ 30 (alterations in original).)  Ms. Beckford reported the incident to Business Change Manager Williams and requested her team "hold a meeting to discuss training options for diversity and cultural sensitivity."  (ECF No. 1-1, at 67

¶¶ 31–32.) "[Ms.] Williams agreed to propose a training to the Human Resources department, but did not address [Ms.] Beckford's complaint concerning [Ms.] Ayers's behavior." (ECF No. 1-1, at 68 ¶ 33.)

In February 2020, Ms. Ayers told Ms. Beckford "that she had a confederate flag at home," and that shooting incidents at schools and churches were because "people don't spank their children and God was removed from schools." (ECF No. 1-1, at 68 ¶¶ 34–35.) Ms. Beckford approached Ms. Ayers concerning these comments, explaining "that she felt unsupported by [Ms.] Ayers as a supervisor[.]" (ECF No. 1-1, at 68 ¶ 37.) Senior Group Underwriter Ayers "became increasingly agitated at this criticism and ended the meeting[.]" (ECF No. 1-1, at 68 ¶ 38.) Ms. Beckford went on to report the dry-erase board and confederate flag incidents to Ms. Williams and Human Resources Representative Bennie Jackson. (ECF No. 1-1, at 68 ¶ 39.) Ms. Jackson initially informed Ms. Beckford that Elevance would conduct an internal investigation, but ultimately Elevance declined to take any action against Ms. Ayers. (ECF No. 1-1, at 68 ¶ 40.) Ms. Beckford requested a transfer to another position, but was told she would need to apply via Elevance's internal job board. (ECF No. 1-1, at 69 ¶¶ 41–42.)

In March 2020, Ms. Beckford submitted a complaint to Team Director Ms. Gregory concerning Ms. Ayers' behavior outlining three instances where Ms. Ayers "engaged in discriminatory or retaliatory behavior directed at her." (ECF No. 1-1, at 69 ¶¶ 43–44.) When Ms. Gregory did not act on this information, Ms. Beckford contacted the Vice President of Human Resources, Carolyn Bradfield, and Manager of Associate Relations, Kelsey Alverson, who both directed Ms. Beckford to report to H.R. Representative Jackson once more. (ECF No. 1-1, at 69 ¶¶ 45–46.) After these complaints, Ms. Ayers's retaliatory behavior

increased. (ECF No. 1-1, at 69 ¶ 48.) Ms. Beckford agreed to attend a mediation with Ms. Ayers, Ms. Jackson, and Team Director Gregory to "develop a resolution for [Ms.] Ayers's discriminatory actions." (ECF No. 1-1, at 69 ¶ 49.) Despite reaching an agreement at the mediation, Ms. Ayers "did not attempt to comply with the agreed-upon course of action." (ECF No. 1-1, at 69 ¶ 51.) By November 2020, Ms. Beckford was diagnosed "as likely under extreme stress" and prescribed medication to regulate her "anxiety and panic attacks." (ECF No. 1-1, at 70 ¶¶ 52–53.)

On February 4, 2021, Elevance informed Ms. Beckford that she would be terminated from her role in Job No. 1 effective March 12, 2021, as part of a reduction in force. (ECF No. 1-1, at 70 ¶ 54; ECF No. 15-1, at 9.)[3] Ms. Beckford was "not aware of any other [Elevance] employees terminated due to this supposed reorganization." (ECF No. 1-1, at 70 ¶ 56.) Following her termination from employment, on March 25, 2021, Ms. Beckford filed Charge No. 1 with the EEOC. (ECF No. 1-1, at 64 ¶ 15, 70 ¶ 57; *see generally* ECF No. 15-1.) In Charge No. 1, Ms. Beckford asserted that her March 12, 2021 termination constituted retaliation under Title VII of the Civil Rights Act ("Title VII"). (ECF No. 15-1, at 5, 10.) That same day, Ms. Beckford also filed a complaint with the Virginia Office of the Attorney General, Office of Civil Rights ("OCR"). (ECF No. 1-1, at 64 ¶ 15.)

---

[3] In paragraph 54 of the Second Amended Complaint, Ms. Beckford states that she received this notice on February 4, 2021. (ECF No. 1-1, at 70 ¶ 54.) This allegation is consistent with Charge No. 1. (ECF No. 15-1 (providing that Ms. Beckford received this notice on February 4, 2021).) This allegation conflicts, however, with paragraph 16 of the Second Amended Complaint, which states that Ms. Beckford received this notice on February 4, **2020**. (ECF No. 1-1, at 70 ¶ 16.) Seeing that paragraph 16 of the Second Amended Complaint constitutes a scrivener's error, the Court concludes that Ms. Beckford received this notice on February 4, **2021**. See *Fayetteville Inv'rs*, 936 F.2d at 1465 ("[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit . . . , the exhibit prevails.");

## 2. Ms. Beckford Rejoins Elevance for Job No. 2

In May 2021, approximately two months after her termination from employment, Ms. Beckford interviewed with Elevance for an underwriter position reporting to a different supervisor ("Job No. 2."). (ECF No. 1-1, at 70 ¶¶ 58, 61; ECF No. 15-2, at 4.) In June 2021, Ms. Beckford received an offer for this position. (ECF No. 1-1, at 70 ¶ 58.) Ms. Beckford explains that, upon being rehired for Job No. 2, she had been "reinstated to the same position [she] had before, but with a different position title" of "Under Analyst". (ECF No. 15-2, at 6; *see also* ECF No. 1-1, at 70 ¶¶ 58–59, 61–62.)

On August 1, 2021, Ms. Beckford emailed her new manager, Craig Gentry, requesting "a mentor to assist her with the return to work due to a medical diagnosis." (ECF No. 1-1, at 71 ¶ 63.) She explained that a mentor would help her "learn as [she] became used to the condition and its corresponding symptoms." (ECF No. 1-1, at 71 ¶ 63.) Mr. Gentry did not respond to this request. (ECF No. 1-1, at 71 ¶ 64.)

On or about September 22, 2021, Ms. Beckford inquired about time-off under the Family Medical Leave Act ("FMLA") after her husband required emergency surgery. (ECF No. 1-1, at 71 ¶ 65; ECF No. 15-2, at 4.) Ms. Beckford requested FMLA leave for a period beginning September 24, 2021, and ending October 8, 2021. (ECF No. 15-2, at 11.) In a letter dated September 24, 2021, Elevance denied this request, explaining that Ms. Beckford had failed to work the requisite 1,250 hours in the past twelve months, as required for FMLA leave entitlements. (ECF No. 15-2, at 11.) In a subsequent phone call, Elevance informed Ms. Beckford that she would not have the requisite number of hours needed for FMLA leave until September 29, 2021. (ECF No. 1-1, at 71 ¶ 66.) Ms. Beckford applied for FMLA leave on September 29, 2021, and was informed that she was eligible if she could give supporting

6

documentation. (ECF No. 1-1, at 71 ¶ 67.) On October 13, 2021, the Leave of Absence department emailed Ms. Beckford "stating that her leave was denied because she was not eligible." (ECF No. 1-1, at 71 ¶ 68.) In all, Elevance sent Ms. Beckford three emails reflecting inconsistent numbers regarding her total working hours. (ECF No. 1-1, at 71 ¶ 68.)

Although Elevance denied Ms. Beckford's requests for FMLA leave, it granted her a leave of absence as an accommodation for her disability for the period beginning October 6, 2021, and ending January 17, 2022. (ECF No. 15-2, at 18.) During this period, on November 21, 2021, Ms. Beckford spoke with a representative of Elevance's Benefits Department regarding Short Term Disability pay. (ECF No. 1-1, at 72 ¶ 73.) The Benefits Department stated that she could only receive Short Term Disability pay after three months of employment. (ECF No. 1-1, at 72 ¶ 74.) Ms. Beckford "was not allowed to return to work" that fall. (ECF No. 1-1, at 72 ¶ 81.) "[O]n December 9, 2021, [she] reluctantly submitted her resignation, informing Anthem that she was discriminated and retaliated against throughout her employment." (ECF No. 1-1, at 72 ¶ 81.)

On December 20, 2021, Ms. Beckford filed Charge No. 2 with the EEOC, broadly stating that Elevance failed to accommodate an unspecified disability, and that the company discriminated against her in violation of Title VII and the Virginia Human Rights Act ("VHRA"). (*See generally*, ECF No. 15-2.) In Charge No. 2, Ms. Beckford states that November 21, 2021 was the latest date that she experienced discrimination. (ECF No. 15-2, at 2.)

### B.   Procedural Background

In August 2022, Ms. Beckford received a Notice of Right to Sue as to both Charge No. 1 and Charge No. 2. (ECF No. 1-1, at 65.) On November 9, 2022, she filed an initial Complaint in

the Circuit Court for the City of Richmond. (ECF No. 1-1, at 3.) On May 1, 2023, she filed an

Amended Complaint and, three days later, she filed a Second Amended Complaint. (ECF No.

1-1, at 37, 62.)

In her Second Amended Complaint Ms. Beckford asserts nine counts:

| | |
|---|---|
| **Count I:** | Race Discrimination in Violation of Title VII of the Civil Rights Act ("Title VII"); |
| **Count II:** | Retaliation in Violation of Title VII ; |
| **Count III:** | Race Discrimination in Violation of 42 U.S.C. § 1981; |
| **Count IV:** | Retaliation in Violation of 42 U.S.C. § 1981; |
| **Count V:** | Race Discrimination in Violation of the Virginia Human Rights Act ("VHRA"); |
| **Count VI:** | Retaliation in Violation of the VHRA; |
| **Count VII:** | Violation of the Virginia Fraud and Abuse Whistleblower Protection Act ("VWPA")"; |
| **Count VIII:** | Interference in Violation of the Family and Medical Leave Act; and, |
| **Count IX:** | Failure to Accommodate in Violation of the Americans with Disabilities Act ("ADA"). |

(ECF No. 1-1, at 73–84.)

Although Ms. Beckford asserts that she presents a constructive discharge claim in her

Second Amended Complaint, no other numbered Counts are delineated on the record.

On December 6, 2023, Elevance removed this matter to this Court, (ECF No. 1), and filed

its Answer on December 13, 2023, (ECF No. 5). On January 16, 2024, Elevance filed the instant

Motion for Judgment on the Pleadings. (ECF No. 14.) Ms. Beckford responded, (ECF No. 20),

and Elevance replied, (ECF No. 21).

For the reasons articulated below, the Court will GRANT the Motion. (ECF No. 14.)

8

## II. Legal Standard

### A. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "A Rule 12(c) motion for judgment on the pleadings therefore is also analyzed for compliance with the Supreme Court's holdings in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 425 F. Supp. 3d 601, 607 (E.D. Va. 2019) (citations omitted).

"It is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C Charles Alan Wright & Arthur R. Miller., Federal Practice and Procedure § 1368 (3d ed. 2023) (citing cases). Similar to a Rule 12(b)(6) motion, the Court must view all "the inferences to be drawn [from the facts] in the light most favorable to the nonmoving party." *Id.* "To survive a motion for judgment on the pleadings, a pleading need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *United States v. Sum of Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d 111, 115 (D.D.C. 2015) (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### III.  Analysis

Elevance seeks relief on three grounds:  (1) Ms. Beckford's claim under the VWPA (Count VII) is untimely; (2) to the extent Ms. Beckford attempts to raise a claim of constructive discharge, the claim fails because, *inter alia*, Ms. Beckford has failed to raise a stand-alone claim of constructive discharge in her Second Amended Complaint; and (3) Ms. Beckford fails to state a claim under the ADA (Count IX).  (ECF No. 15, at 1–3, 8–9.)

Accepting Ms. Beckford's factual allegations as true and drawing all reasonable inferences in her favor, as the Court must do at this procedural juncture, the Court will grant the Motion in its entirety.  First, Ms. Beckford's VWPA Claim (Count VII) is time-barred and therefore must be dismissed.  Second, the Second Amended Complaint, submitted by a represented plaintiff, does not fairly present a claim of constructive discharge to the Court.  Finally, Ms. Beckford fails to state a claim under the ADA, requiring the Court to also dismiss Count IX.

### A.  Ms. Beckford's Claim Under The Virginia Fraud and Abuse Whistleblower Protection Act (Count VII) Will Be Dismissed as it is Time-Barred

Ms. Beckford brings Count VII of the Second Amended Complaint under the VWPA.  (ECF No. 1-1, at 82 (citing Va. Code § 40.1-27.3.)  On February 4, 2021, Elevance informed Ms. Beckford that she would be terminated from her employment effective March 12, 2021.  (ECF No. 1-1, at 70 ¶ 54.)  In Count VII, Ms. Beckford contends that Elevance terminated her "for reporting violations of the law", in violation of the VWPA.  (ECF No. 1-1, at 72 ¶ 78, 82 ¶¶ 174–78.)  The VWPA supplies a one-year statute of limitations.  Va. Code § 40.1-27.3(C).  Ms. Beckford's VWPA claim accrued on February 4, 2021, but she did not file her initial complaint until November 9, 2022.  (ECF No. 1-1, at 3.)  As a result, Count VII is time-barred and will be dismissed.

10

1.    **Legal Standard: Virginia Fraud and Abuse Whistleblower Protection Act**

The VWPA is codified at Va. Code Ann. § 40.1-27.  Relevant to this action, the statute prohibits employers from firing, disciplining, penalizing, threatening, discriminating, or otherwise retaliating against an employee when her or she "in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official".  Va. Code § 40.1-27.3(A).[4]

The VWPA supplies a one-year statute of limitations, stating that "[a] person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action."  Va. Code § 40.1-27.3(C).  "The plain text of the statute therefore makes clear that the relevant focus for beginning the one-year statute of limitations period is the employer's 'retaliatory action,' not the later consequences of that

_____

[4] Va. Code § 40.1-27.3 states in relevant part:

(A) An employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee:

> (1) Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official[.]

* * * *

(C) A person who alleges a violation of this section may bring a civil action in a court of competent jurisdiction within one year of the employer's prohibited retaliatory action. The court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs.

Va. Code § 40.1-27.3(A), (C).

11

action." *Kulshrestha v. Shady Grove Reprod. Sci. Ctr., P.C.*, 668 F. Supp. 3d 411, 415–16 (E.D. Va. 2023) (quoting Va. Code § 40.1-27.3(C)).  With respect to a termination, a plaintiff's cause of action accrues, *i.e.*, the one-year statute of limitations begins to run, when the plaintiff receives notice of his or her termination from employment.  *See Kulshrestha*, 668 F. Supp. 3d at 416.  This is so because by the time an employee has received such notice, the employer has "committed a 'prohibited retaliatory action' against [him or] her as required by the statute." *Id.* (quoting Va. Code § 40.1-27.3(C).); *see also Rivera v. ManTech Int'l Corp.*, 81 Va. App. 170, 178 (Va. Ct. App. 2024) (concluding, in a matter of first impression, that statute of limitations for VWPA claim began to run on the date employee received notice of termination from employment).

### 2.    Count VII (Virginia Fraud and Abuse Whistleblower Protection Act) is Time-Barred

The statute of limitations for Ms. Beckford's VWPA claim began to run on February 4, 2021, the date she received notice of her termination from employment.  (ECF No. 1-1, at 70 ¶ 54).  *See Kulshrestha*, 668 F. Supp. 3d at 416; *Rivera*, 81 Va. App. at 178.  Because Ms. Beckford did not file her initial complaint until November 9, 2022, long after VWPA's one-year statute of limitations had expired, her VWPA claim is untimely.  Ms. Beckford properly withdraws her untimely VWPA claim in her later-filed Opposition to Defendant's Motion for Summary Judgment.  (ECF No. 43, at 23.)  The Court will dismiss Count VII.

### B.    Ms. Beckford Does Not Fairly Present a Claim of Constructive Discharge in her Second Amended Complaint

Ms. Beckford's Second Amended Complaint includes nine counts, none of which raise a stand-alone constructive discharge claim.  (*See* ECF No. 1-1, at 73–84.)  The phrase "constructive discharge" does not appear anywhere in the Second Amended Complaint.

Nonetheless, after Elevance challenged the merits of a constructive discharge claim in its Motion,[5] Ms. Beckford stated in response that the Court should "[s]ustain[]" this claim. (ECF No. 20, at 14.) Ms. Beckford has never sought, and does not currently seek, leave to file a Third Amended Complaint raising a constructive discharge claim.

Ms. Beckford identifies no case law requiring the Court to conjure up and consider a claim of constructive discharge where she fails to raise it as a stand-alone claim. Nor does she explain why the Court should do so when the phrase "constructive discharge" does not appear anywhere in her lengthy Second Amended Complaint, and—even if it were there—it would remain unclear from the Second Amended Complaint whether Ms. Beckford intends to raise such a claim under state law, federal law, or both. Ms. Beckford is currently represented by counsel, and counsel signed and submitted all three iterations of her Complaint. (ECR No. 1-1, at 26, 60, 85.) Plaintiffs who are represented by legal counsel do not receive the benefit of liberal construction of complaints. *See Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 72 (4th Cir. 2016). As the United States Court of Appeals for the Fourth Circuit explained in *Beaudett v. City of Hampton*, ideally a court can expect those trained in law "to frame legal issues with [] clarity and precision[,] [but] district courts [cannot] be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

The Second Amended Complaint does not fairly present a claim of constructive discharge to the Court. Although Ms. Beckford requests in her Opposition that the Court "[s]ustain[]" her

---

[5] Elevance asks the court to consider the merits of Ms. Beckford's constructive discharge claim because the Second Amended Complaint (1) "uses language referring to the standard for a constructive discharge claim", including by "mak[ing] a passing reference to one of the elements of a claim for constructive discharge", (2) "seeks relief relating to [Ms. Beckford's] resignation from Job No. 2", and (3) "Plaintiff's counsel confirmed that Plaintiff did intend to assert a constructive discharge claim." (ECF No. 15, at 8–9.)

claim of constructive discharge, and implies that she intends to bring such a claim under Title VII, the ADA, and the VHRA, (ECF No. 20, at 14), the Court rejects Ms. Beckford's improper attempt to amend her Second Amended Complaint via briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (It is well-established that parties cannot amend their complaints through briefing.)

### C.    Ms. Beckford's Claim for Failure to Accommodate Under the ADA (Count IX) Will be Dismissed Because She Does Not Show She Was a Qualified Individual With a Disability

Ms. Beckford brings Count IX of the Second Amended Complaint under the ADA for Elevance's failure to accommodate her disability. (ECF No. 1-1, at 84 ¶¶ 187–93.)  Specifically, Ms. Beckford states that she was denied a reasonable accommodation while working for Job No. 2 when her new manager, Craig Gentry, failed to respond to a Sunday, August 1, 2021 email from her requesting a mentor during job training due to an unspecified medical condition. (ECF No. 1-1, at 71 ¶¶ 63–64, 84 ¶¶ 189–92.)

Ms. Beckford fails to show that she was a qualified individual with a disability within the meaning of the ADA.  She therefore fails to satisfy element one of a failure to accommodate claim under the ADA and Count IX must be dismissed. *See Fedynich v. Boulder Hous. Partners*, No. 3:20CV165 (DJN), 2020 WL 5371352, at *10 (E.D. Va. Sept. 8, 2020), *aff'd*, No. 20-2082, 2023 WL 1814208 (4th Cir. Feb. 8, 2023).

### 1.    Legal Standard:  Failure to Accommodate Under the ADA

Under the ADA, an employer discriminates against an employee by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business[.]"  42 U.S.C.

§ 12112(b)(5)(A); *Webb v. Chesterfield Cnty., Va.*, No. 3:19-CV-00183 (JAG), 2019 WL

2992011, at *2 (E.D. Va. July 8, 2019).

To establish a prima facie case for failure to accommodate under the ADA,[6] a plaintiff

must show that: (1) he or she was a qualified person[7] with a disability[8]; (2) the employer had

notice of the disability; (3) with reasonable accommodation he or she could perform the essential

functions of the position; and, (4) the employer refused to make such accommodations. *Rhoads*

*v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citation omitted). Although each element

involves a question of fact, *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994), to

survive a Rule 12(b)(6) motion to dismiss, a plaintiff must nevertheless allege facts sufficient to

state all the elements of a failure to accommodate claim. *See, e.g, Taylor v. Revature, LLC*, No.

1:22-cv-1153 (RDA/JFA), 2023 WL 6445857, at *6–*7 (E.D. Va. Sept. 28, 2023) (granting

motion to dismiss failure to accommodate claim where plaintiff "failed to allege any facts

identifying a physical or mental impairment in her Complaint or provide any medical

documentation of a physical or mental impairment."); *Fedynich*, 2020 WL 5371352, at *8–*10

---

[6] Courts apply the same analysis to claims for failure to accommodate under both the ADA and the Rehabilitation Act. *Lewis v. Gibson*, 621 F. App'x 163, 164 (4th Cir. 2015) (citing cases). Accordingly, the Court may rely upon the guidance of courts examining claims under either statute to analyze the elements of [Ms. Beckford's] failure to accommodate claim. *Id.*; *see also Sumner v. Mary Washington Healthcare Physicians*, No. 3:15CV42 (MHL), 2016 WL 5852856, at *5 (E.D. Va. Sept. 30, 2016).

[7] When considering whether an employee is a "qualified individual" under the ADA, courts consider whether the employee "'can perform the essential functions of the employment position that such individual holds or desires.'" *Jones*, 16 F. Supp. 3d at 632 (quoting 42 U.S.C. § 12111). "The 'essential functions' are those 'fundamental job duties of the employment position.'" *Id.* (quoting 29 C.F.R. § 1630.2(n)(2)).

[8] "[T]he ADA defines a 'disability' as including . . . a physical or mental impairment that substantially limits one or more major life activities.'" *Akbar-Hussain v. ACCA, Inc.*, No. 1:16CV1323 (JCC/IDD), 2017 WL 176596, at *3 (E.D. Va. Jan. 17, 2017) (quoting 42 U.S.C. § 12102(1) and citing 29 C.F.R. § 1630.2(g)(1)(i)–(iii)).

(granting motion to dismiss failure to accommodate claim where plaintiffs failed to "allege[] any specific facts that identify a plausible disability[.]"); *Smith v. Virginia Dep't of Agric. & Consumer Servs.*, No. 3:12CV77 (MHL), 2012 WL 2401749, at \*9 (E.D. Va. June 25, 2012) (granting motion to dismiss failure to accommodate claim where plaintiff "allege[d] in a conclusory fashion that she has 'a mental illness' and 'extra stressors' and that her doctor provided documentation of such", and provided "no other allegations or facts showing that this condition qualified [plaintiff] as disabled.")

A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). When determining whether an employee is a "qualified individual" under the ADA, courts consider whether the employee "'can perform the essential functions of the employment position that such individual holds or desires.'" *Jones v. HCA*, 16 F. Supp. 3d 622, 632 (E.D. Va. 2014) (quoting 42 U.S.C. § 12111). "The 'essential functions' are those 'fundamental job duties of the employment position.'" *Id.* (quoting 29 C.F.R. § 1630.2(n)(2)). At the motion to dismiss stage, courts in this district have not required plaintiffs to allege their essential job functions to successfully allege that they are qualified individuals. *See, e.g.*, *Webb v. Chesterfield Cnty., Va.*, No. 3:19-CV-00183 (JAG), 2019 WL 2992011, at \*2 (E.D. Va. July 8, 2019); *Jones*, 16 F. Supp. 3d at 632. Rather, courts "focus[] on whether a plaintiff has alleged that he [or she] could perform the essential functions" of his or her position. *Webb*, 2019 WL 2992011, at \*2 (firefighter plausibly alleged that he was a "qualified individual" under the ADA where he "[did] not allege the essential functions of his position as a firefighter", but alleged that he worked as a firefighter without incident while experiencing a lack of accommodation for his PTSD) (citing *Jones*, 16 F. Supp. 3d at 632 and *Sumner v. Mary*

16

*Washington Healthcare Physicians*, No. 3:15CV42 (MHL), 2016 WL 5852856, at *6 (E.D. Va. Sept. 30, 2016)).

"The defendant in a disability discrimination suit does not have fair notice when the plaintiff fails to identify his [or her] disability." *Fedynich*, 2020 WL 5371352, at *10 (internal quotations and citation omitted). Passing references to "mental health needs," "disabilities," "medical conditions" and "health issues" insufficiently "identify a plausible disability sufficient to state a claim under . . . the ADA" where a plaintiff "fail[s] to identify or even describe the nature of these alleged disabilities." *Id.*

### 2. Ms. Beckford Fails to Sufficiently Allege She had a Disability Covered by the ADA

Ms. Beckford fails to state a claim for failure to accommodate under the ADA because she does not adequately plead that she was a qualified individual with a disability. *See Smith*, 2012 WL 2401749, at *9. Skipping over whether or not Ms. Beckford is a qualified individual, the parties dispute whether or not she has a identified a disability. The Second Amended Complaint contains the allegation that on August 1, 2021, while working for Job No. 2, Ms. Beckford emailed her new manager requesting "a mentor to assist her with the return to work due to a medical diagnosis". (ECF No. 1-1, at 71 ¶ 63.) The Second Amended Complaint provides no further elaboration on this medical diagnosis. The Second Amended Complaint does, however, note that in November 2020, while Ms. Beckford worked for Job No. 1, she "suffer[ed] severe symptoms of stress and anxiety [and] sought the advice of a medical professional who diagnosed her as likely under extreme stress". (ECF No. 1-1, at 70 ¶ 52.) The Second Amended Complaint provides no facts indicating that Ms. Beckford was referring to the November 2020 diagnosis of "likely under extreme stress" with respect to her August 2021 request for a mentor "due to a medical diagnosis." (ECF No.

1-1, at 71 ¶ 63.)  Fatal to her claim, Ms. Beckford fails to provide any allegation stating what type of diagnosis she relies upon for Count IX, and how it constitutes "a physical or mental impairment that substantially limits one or more major life activities."  *See* Smith, 2012 WL 2401749, at *9.[9]  The Second Amended Complaint thus does not properly state a claim for failure to accommodate under the ADA.

In her Opposition, Ms. Beckford requests that if the Court "determine[s] that Elevance did not have notice of [Ms.] Beckford's disability, [she] should be allowed to amend her Complaint in that regard."  (ECF No. 20, at 21.)  Elevance does not provide its position as to this request in its Reply.  (*See generally*, ECF No. 21.)

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, a "district court may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or]

---

[9] In her Opposition, Ms. Beckford fails to identify allegations in the Second Amended Complaint that would allow the Court to reach a contrary conclusion.  (*See* ECF No. 20, at 18–20.)  In her Opposition, Ms. Beckford focuses on her manager's failure to respond to her August 1, 2021 email, and states that Count IX should survive because she "she notified Elevance of her medical diagnosis and participated in numerous discussions with HR about the abusive and inappropriate treatment from which she was suffering."  (ECF No. 20, at 21.)  In support of this argument, Ms. Beckford refers to an "initial diagnosis of anxiety" which is not referenced in the Second Amended Complaint, but is likely a reference to Ms. Beckford's November 2020 diagnosis of being "likely under extreme stress" for which Ms. Beckford was prescribed medication to regular her "anxiety and panic attacks."  (ECF No. 20, at 20; ECF No. 1-1, at 70 ¶¶ 52–53.)  Ms. Beckford's Opposition provides no substantive response to Elevance's argument that the Second Amended Complaint fails to state sufficient facts regarding her disability.  (ECF No. 15, at 17–19; ECF No. 20, at 18–21.)

futility of amendment[.]'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006)
(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Ms. Beckford has already placed three iterations of her Complaint before the Court.
(ECF No. 1-1, at 3, 37, 62.)  Despite having multiple opportunities to amend, Ms. Beckford fails
to cure the deficiencies in her previous attempts to present a failure to accommodate claim.
*Glaser*, 464 F.3d at 480.  In her Opposition, Ms. Beckford does not provide any facts or
argument remotely suggesting that the Court would conclude otherwise if presented with a Third
Amendment Complaint.  (ECF No. 20, at 18–22.)  Thus, a third amendment would cause undue
prejudice to Elevance by requiring it to file yet another responsive pleading.  *Glaser*, 464 F.3d at
480.  Indeed, the amendment likely would be futile.  *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d
462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a
claim under the rules and accompanying standards.")  The Court will deny Ms. Beckford's
request for leave to amend Count IX.

### IV.  Conclusion

For the reasons articulated above, the Court will grant Elevance's Motion for Partial
Judgment on the Pleadings.  (ECF No. 14.)  Because Ms. Beckford has already had two
opportunities to amend her Complaint, the Court will grant the Motion with prejudice.

An appropriate Order shall issue.

Date: 8/28/24
Richmond, Virginia

_____
M. Hannah Lauck
United States District Judge